UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

MITCH WINE,

    Appellant,

     v.

DEPARTMENT OF THE INTERIOR,

    Agency.

DOCKET NUMBER
DA-1221-16-0513-W-2

DATE: February 10, 2023

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Mitch Wine</u>, Mountain View, Arkansas , pro se.

<u>Annette Tarnawsky</u>, Esquire, and <u>John Austin</u>, Esquire, Knoxville,
 Tennessee, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Limon recused himself and
did not participate in the adjudication of this appeal.

### FINAL ORDER

¶1  The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in this individual right of action appeal.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to clarify the applicable legal standards and supplement the administrative judge's analysis of the agency's burden of proof, we AFFIRM the initial decision.

## BACKGROUND

¶2      The following facts, as further detailed in the initial decision and record, appear to be undisputed. At all times relevant to this appeal, the appellant worked for the Department of the Interior's Fish and Wildlife Service (FWS). *Wine v. Department of the Interior*, MSPB Docket No. DA-1221-16-0513-W-2, Refiled Appeal File (RAF), Tab 6, Initial Decision (ID) at 2.[2] From June 2003 to October 2014, he worked as a Transportation Liaison wherein his duties included coordinating with the Arkansas Highway and Transportation Department

---

[2] To accommodate scheduling conflicts, the administrative judge dismissed the appellant's initial appeal without prejudice, for automatic refiling at a later date. *Wine v. Department of the Interior*, MSPB Docket No. DA-1221-16-0513-W-1, Initial Appeal File, Tab 114, Initial Decision. It was refiled on the appointed date as MSPB Docket No. DA-1221-16-0513-W-2.

(AHTD), the Federal Highway Administration (FHA), and other entities to mitigate the environmental impact of transportation projects. *Id.*

¶3 In 2011, the appellant purchased a tract of land, and in the years that followed he sought out a Nationwide Permit (NWP) from the United States Army Corps of Engineers (USACE) to use that land as a mitigation bank—in his personal capacity, through a limited liability corporation he owned. ID at 2-3; *see, e.g.*, *Wine v. Department of the Interior*, MSPB Docket No. DA-1221-16-0513-W-1, Initial Appeal File (IAF), Tab 41 at 23, Tab 45 at 4-10. The appellant has described mitigation banking in a succinct manner that is useful background information endorsed by the agency. *Wine v. Department of the Interior*, MSPB Docket No. DA-1221-16-0513-W-2, Petition for Review (PFR) File, Tab 7 at 7-8, Tab 15 at 6. In short, mitigation is required for projects that will negatively impact the waters of the United States. PFR File, Tab 7 at 7. This is accomplished through various means, including compensation. *Id.* Compensation involves a system regulated by the USACE wherein an entity compensates for the damage it causes to one parcel through the repair of another. *Id.* In practice, this works as follows: If, for example, the AHTD is unable to avoid or minimize damage to a waterway during the construction of a highway, that damage is assigned a number of mitigation credits. *Id.* at 7-8. The AHTD then purchases a corresponding number of mitigation credits from a mitigation banker, i.e., a separate individual or entity that generated credits through restoration projects. *Id.*

¶4 In September 2013, the appellant sought and received agency approval to engage in outside employment—mitigation banking. ID at 3-4; IAF, Tab 13 at 125-27. A year later, in October 2014, the appellant left his Transportation Liaison position to become the agency's Karst and Cave Biologist. ID at 4. Despite this change in position, the appellant's FWS work continued to involve the AHTD and other outside entities. For example, in his new role, the appellant assessed whether AHTD projects adversely affected the groundwater and

endangered species in the Karst region.  ID at 15.  In October 2014, just after the change in his FWS position, the appellant received the NWP he had been seeking for his personal mitigation bank.  ID at 3; IAF, Tab 46 at 5-6.

¶5    Between February and May 2015, the appellant reported what he believed were violations of the Endangered Species Act, the Clean Water Act, and the National Environmental Policy Act in connection with several AHTD projects, as well as a sewer project for the City of Centerton.  ID at 4.  Around this same period, the appellant actively solicited both the AHTD and the USACE regarding the mitigation credits he had to offer.  ID at 5.

¶6    In June 2015, the USACE contacted the FWS, expressing ethics concerns about the appellant—concerns the USACE described as being shared by the AHTD and the FHA.  ID at 5-6.  Specifically, the USACE recounted the appellant's "decreasingly professional demeanor" in the form of aggressive telephone calls and emails, as well as a perceived conflict of interest between the appellant's FWS position and his mitigation banking.  *Id*.; IAF, Tab 11 at 116-17.  For example, the USACE official recounted how the appellant had, at times, called staff to discuss both his FWS work and mitigation banking work in the same lengthy telephone call.  IAF, Tab 11 at 116.  This USACE official also recounted how the appellant had essentially worked on certain AHTD projects in his FWS role, then claimed violations on those projects, and then hoped for or expected AHTD to resolve the matter by purchasing the mitigation credits he personally had available for sale.  *Id*. at 116-17.

¶7    In August 2015, the appellant's employing agency—FWS—hired an outside firm to investigate USACE's allegations.  ID at 6-7; *see, e.g*., IAF, Tab 11 at 73.  Around that same time, the appellant completed a 2-week detail assignment.  ID at 35; *see, e.g*., IAF, Tab 11 at 126.  After the conclusion of its investigation, the agency issued a January 2016 letter asking the appellant to either cease his mitigation banking or resign from his FWS position, effectively rescinding the

approval for outside activity that had been granted 2 years earlier.[3]  ID at 7; IAF, Tab 11 at 20-22.  The agency subsequently issued a March 2016 memorandum of expectations that, among other things, prohibited him from communicating with USACE or AHTD on official time, with some exceptions, and reassigned some of his duties.  ID at 7-8; IAF, Tab 10 at 60-61.

¶8    The appellant filed two complaints with the Office of Special Counsel (OSC), alleging that the agency had subjected him to whistleblower reprisal.  ID at 8-9.  He later filed the instant IRA appeal alleging the same.  IAF, Tab 1.

¶9    After developing the record and holding the requested hearing, the administrative judge denied the appellant's request for corrective action.  ID at 2.  She first found that the appellant met his burden of proving that he made protected disclosures, which generally pertained to violations of environmental laws, and those protected disclosures were a contributing factor in 4 alleged personnel actions:  the 2-week detail assignment (Personnel Action 1); the decision to rescind his approval to engage in outside activity (Personnel Action 3); the restriction on his communications with USACE and AHTD (Personnel Action 4); and the reassignment of certain duties (Personnel Action 5).[4]  ID at 13-20, 22-32.  Although the appellant alleged that the agency's investigation (Personnel Action 2) constituted another covered personnel action, the administrative judge found otherwise.  ID at 20-22.  Because she found that the appellant established a prima facie case of reprisal, the administrative judge shifted the burden and found that the agency proved that it would have taken the

---

[3]  In the initial decision, the administrative judge identified this letter as dated December 2015, but the associated citation and description corresponds to a letter dated January 2016.  *Compare* ID at 7, *with* IAF, Tab 11 at 20-22.  The appellant has also, at times, referred to this memorandum as being dated December 2015.  PFR File, Tab 7 at 30.  For the sake of clarity, our decision will exclusively refer to the January 2016 date.

[4] For the sake of clarity, we will utilize the same identifying descriptors from the initial decision—Personnel Actions 1-5.

same actions in the absence of the appellant's protected whistleblowing. ID at 32-55.

¶10    The appellant has filed a petition for review. PFR File, Tab 7. The agency has filed a response, and the appellant has replied. PFR File, Tabs 15, 18. The appellant has since filed three motions. PFR File, Tabs 19-20, 27. In the first, the appellant's attorney requested oral argument before the Board, simply citing "the complexity of the matter." PFR File, Tab 19. That request is denied. *See New v. Department of Veterans Affairs*, 99 M.S.P.R. 404, ¶ 13 (2005) (denying a request for oral argument where the appellant failed to indicate what would be presented at oral argument or show that such argument would add to the proceedings); *Social Security Administration v. Harty*, 96 M.S.P.R. 65, ¶ 13 (2004) (same). In the second, filed by the appellant himself because he terminated his representative, the appellant requests leave to submit additional arguments and evidence. PFR File, Tab 20 at 4, Tab 23 at 2. The agency presented an argument in opposition, after the Clerk of the Board denied the agency's attempt to submit evidence in opposition. PFR File, Tabs 22, 24. It seems that the basis for the appellant's request, which the agency opposes, is a combination of dissatisfaction with his attorney's choices, documents from 2016 that he recently discovered, and a new legal theory. PFR File, Tab 20 at 4-6. The appellant's request is denied. *See, e.g.*, 5 C.F.R. § 1201.114(a) (recognizing the pleadings allowed on review); *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (the Board will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence); *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980) (the Board will not consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence); *see also Grassell v. Department of Transportation*, 40 M.S.P.R. 554, 564 (1989) (to constitute new and material evidence, the information contained in

the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed). For the same reasons, we also deny the appellant's third motion, which also seeks an opportunity to present additional arguments and evidence, this time regarding what the appellant describes as medical evidence proving that he was harmed by agency reprisal. PFR File, Tab 27.

## ANALYSIS

¶11     Under the Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. No. 112-199, 126 Stat. 1465, the Board has jurisdiction over an IRA appeal if the appellant has exhausted his administrative remedies before OSC and makes nonfrivolous allegations that (1) he made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)(2)(A). *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). Once an appellant establishes jurisdiction over his IRA appeal, he is entitled to a hearing on the merits of his claim, which he must prove by preponderant evidence. *Id*.

¶12     If the appellant proves that his protected disclosure or activity was a contributing factor in a personnel action taken against him, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure. *Id*. In determining whether the agency has met this burden, the Board will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers, but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d

1318, 1323 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Phillips v. Department of Transportation*, 113 M.S.P.R. 73, ¶ 11 (2010). The U.S. Court of Appeals for the Federal Circuit has added that "[e]vidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

The scope of this appeal is limited to the personnel actions that were identified in the prehearing summary.

¶13    There appears to be no dispute that the appellant met the exhaustion requirement regarding several alleged personnel actions. *See, e.g*., IAF, Tab 54 at 45-46, 50-51. In his complaints to OSC, the appellant alleged that he disclosed violations of the Endangered Species Act, the Clean Water Act, and the National Environmental Policy Act by the AHTD, USACE, and City of Centerton, IAF, Tab 4 at 38, 45-46, Tab 38 at 14-15, 21-22, after which FWS engaged in retaliation in the form of an investigation (Personnel Action 2), IAF, Tab 4 at 40, 46, Tab 38 at 22, the decision to rescind his approval for outside activity (Personnel Action 3), IAF, Tab 4 at 40, 47, Tab 38 at 16, 22-23, the restriction on his communications with USACE and AHTD (Personnel Action 4), IAF, Tab 4 at 40, 47-48, Tab 38 at 16, 23, and the reassignment of certain job duties (Personnel Action 5), IAF, Tab 4 at 47-48.[5]

¶14    On review, the appellant suggests that the administrative judge erroneously limited the scope of his appeal to exclude two other alleged personnel actions: the agency's January 2016 letter rescinding the approval for outside activity and

---

[5] We will not address Personnel Action 1 in this decision, since neither party raised it on review and the appellant has seemingly abandoned the claim.

its March 2016 memorandum of expectations. He seems to suggest that the documents constitute additional personnel actions, above and beyond Personnel Actions 3-5, the personnel actions first identified within those documents. PFR File, Tab 7 at 30. He also alludes to a hostile work environment, as if that may have been yet another personnel action. *Id*. at 28. However, the appellant did not raise these as personnel actions below, in response to the administrative judge's prehearing summary, which identified the only issues to be considered. IAF, Tab 94 at 2-3. Accordingly, we will not consider them on review. *See Crowe v. Small Business Administration*, 53 M.S.P.R. 631, 634-35 (1992) (explaining that an issue is not properly before the Board when it is not included in the administrative judge's memorandum summarizing the prehearing conference, which states that no other issues will be considered, unless either party objects); *see also Durr v. Department of Veterans Affairs*, 119 M.S.P.R. 195, ¶ 16 n.2 (2013) (applying this principle in the context of a new theory of alleged whistleblower retaliation that was not among the issues considered before the administrative judge, even if that theory had been exhausted before OSC).

The appellant is not entitled to corrective action for Personnel Action 2.

¶15 As mentioned above, there is no dispute that the appellant met his burden of proving exhaustion for the matters properly before us on review, including Personnel Actions 2-5. *Supra* ¶ 13. Similarly undisputed is the administrative judge's finding that the appellant made protected disclosures. ID at 13-19. Generally speaking, those disclosures involved his various reports of construction projects either causing environmental damage or failing to meet applicable standards in violation of the Endangered Species Act, the Clean Water Act, and the National Environmental Policy Act. ID at 13-15. For example, the appellant disclosed that the AHTD's work on a particular project—Highway 5—had resulted in a nearby stream's contamination, as demonstrated by his measurement of turbidity, which would adversely affect species in the region. ID at 14-15; *see, e.g.*, IAF, Tab 4 at 53-56, Tab 14 at 130. The appellant made these disclosures to

numerous officials or entities, including his chain of command, the Arkansas Department of Environmental Qualify (ADEQ), the USACE, and the U.S. Attorney's Office for the Eastern District of Arkansas. ID at 15-18. In fact, for the aforementioned example, ADEQ responded to the appellant's disclosure by investigating and determining that the AHTD had failed to utilize proper controls to prevent contamination. ID at 15; IAF, Tab 4 at 51-52, 58-59. Further, the appellant's first- and second-level supervisors both testified that they agreed with at least some of the appellant's assessments of environmental violations, and his disclosures resulted in the remediation of multiple sites.[6] ID at 16-17.

¶16    It is also undisputed that the appellant's protected disclosures were close enough in time to satisfy the contributing factor criterion for Personnel Actions 2-5. ID at 30-32. However, what is disputed on review is whether Personnel Action 2 constituted a covered personnel action and, if so, whether the agency proved that it would have taken the same action in the absence of the appellant's whistleblowing. The administrative judge found that the appellant failed to meet his burden of presenting a prima facie case of whistleblower reprisal regarding the agency's investigation, Personnel Action 2, because that investigation was not a covered personnel action. ID at 20-22. On review, the appellant reasserts that the agency's investigation was a covered personnel action, and it would not have occurred in the absence of his whistleblowing. PFR File, Tab 7 at 10-19.

¶17    A "personnel action" is defined as follows: (i) appointments; (ii) promotions; (iii) actions under 5 U.S.C. chapter 75 or other disciplinary or

---

[6] The administrative judge recognized that the appellant's disclosures were "related to" his duties. ID at 12. However, she noted that the appellant's supervisor provided testimony indicating that at least some of the appellant's disclosures were outside his normal duties, and the agency does not appear to have argued otherwise. ID at 16; PFR File, Tab 15 at 10. Accordingly, this appeal does not appear to implicate 5 U.S.C. § 2302(f)(2), the provision identifying a heightened legal burden in cases that involve a disclosure made in the normal course of duties of an employee.

corrective actions; (iv) details, transfers, or reassignments; (v) reinstatements; (vi) restorations; (vii) reemployments; (viii) performance evaluations under 5 U.S.C. chapter 43 or under Title 38; (ix) decisions regarding pay, benefits, or awards, or involving education or training if it reasonably may be expected to lead to an appointment, promotion, performance evaluation, or other action described in 5 U.S.C. § 2302(a)(2)(A); (x) decisions to order psychiatric testing or examination; (xi) implementations or enforcements of any nondisclosure policy, form, or agreement; and (xii) any other significant changes in duties, responsibilities, or working conditions. 5 U.S.C. § 2302(a)(2)(A); *Spivey v. Department of Justice*, 2022 MSPB 24, ¶ 6. In arguing that the agency's investigation constitutes a covered personnel action, even though it is not specifically enumerated in section 2302(a)(2)(A), the appellant presents a two-fold argument about the law, followed by an argument about the facts. We will address each in turn.

*The Applicable Standard*[7]

¶18    The appellant first refers us to a change in the law between the Whistleblower Protection Act (WPA) and the WPEA. PFR File, Tab 7 at 10-11. Among other things, the latter added 5 U.S.C. § 1221(g)(4) to the relevant statutory scheme. *See* WPEA § 104. That provision provides as follows: "Any corrective action ordered under this section to correct a prohibited personnel practice may include fees, costs, or damages reasonably incurred due to an agency

---

[7] Though not raised by the appellant, we recognize that the National Defense Authorization Act for Fiscal Year 2018, Pub. L. No. 115-91, 131 Stat. 1283, was signed into law on December 12, 2017, just after the issuance of the initial decision in the instant appeal. *Spivey*, 22 MSPB 24, ¶ 5 n.1. In particular, Congress added a provision to 5 U.S.C. § 1214 that allows OSC to petition the Board for corrective action concerning damages incurred by an employee due to an agency's investigation of the employee if it was commenced, expanded, or extended in retaliation for protected whistleblowing activity. *Id.*; *see* 5 U.S.C. § 1214(i). Regardless of questions concerning retroactivity, the provision does not apply to the instant IRA appeal because OSC has not petitioned the Board for such relief. *Spivey*, 2022 MSPB 24, ¶ 5 n.1.

investigation of the employee, if such investigation was commenced, expanded, or extended in retaliation for the disclosure or protected activity that formed the basis of the corrective action." 5 U.S.C. § 1221(g)(4). According to the appellant, the addition of section 1221(g)(4) shows that Congress intended to expand whistleblower protections to include retaliatory investigations as actionable personnel actions, on their own. PFR File, Tab 7 at 10-11. We disagree.

¶19 Section 1221(g)(4) does not create a separate cause of action for retaliatory investigations. In fact, the legislative history shows that Congress considered and rejected the option of changing the standard developed under the WPA and Board precedent to recognize a retaliatory investigation as a personnel action because Congress wanted to avoid discouraging agencies from undertaking legitimate and necessary inquiries. *See* S. Rep. No. 112-155, at 20-22 (2012), *as reprinted in* 2012 U.S.C.C.A.N. 589, 608-09 (referencing *Russell v. Department of Justice*, 76 M.S.P.R. 317, 323-25 (1997)). Congress opted to instead authorize an award of consequential damages once an employee is able to prove a claim under the WPA, if the employee can further demonstrate that an investigation was undertaken in retaliation for the protected disclosure. *Id*. at 21-22; *see* 5 C.F.R. § 1201.202(b)(2). Accordingly, the appellant's first argument about his retaliation by investigation claim fails.

¶20 The appellant's second argument, in the alternative, is that the agency's investigation qualified as a covered personnel action, even before the WPEA's addition of section 1221(g)(4). PFR File, Tab 7 at 11. He asserts that "a retaliatory investigation was considered a personnel action if it was a pretext for gathering evidence to retaliate." *Id*. (citing *Russell*, 76 M.S.P.R. at 323-24). On this point, we again disagree. The appellant appears to misunderstand Board precedent.

¶21 An investigation into an allegation of misconduct is not a personnel action per se. *Spivey*, 2022 MSPB 24, ¶ 10. Instead, the investigation must otherwise fit

within one of the items listed under section 2302(a)(2)(A) to constitute a covered personnel action. *See id*. (discussing S. Rep. No. 112-155, at 20). However, even if the investigation does not constitute a significant change in working conditions or other personnel action enumerated in section 2302(a)(2)(A), the Board will consider evidence of the conduct of an agency investigation when it is so closely related to a personnel action that it could have been pretext for gathering evidence to retaliate. *Spivey*, 2022 MSPB 24, ¶ 10; *Russell*, 76 M.S.P.R. at 323-24. In considering such evidence, the Board looks at where the investigation had its beginnings. *Russell*, 76 M.S.P.R. at 324.

¶22    The Board's decision in *Mangano v. Department of Veterans Affairs*, 109 M.S.P.R. 658 (2008), best illustrates how the appellant's assertions about the applicable standard are mistaken. The appellant in *Mangano* argued that the administrative judge erred by finding that two investigations—an Administrative Investigation Board (AIB) and a Quality Improvement Review (QIR)—were not personnel actions. *Id*., ¶¶ 3, 36. The Board did not adopt the appellant's position, and the Board did not find that the agency's investigations were covered personnel actions. *Id*., ¶¶ 36-44. Instead, the Board recognized that the AIB and QIR investigations were so closely related to the misconduct charge underlying the appellant's removal that they could have been pretext for gathering evidence to use to retaliate for his whistleblowing. *Id*., ¶ 44. In doing so, the Board discussed how the QIR was convened by the subject of the employee's whistleblowing and was conducted in an unusual manner, and the agency included the AIB results in its misconduct charge against the employee in a way that was inconsistent with the investigatory results. *Id*. Under those circumstances, the Board concluded that the appellant's allegation of retaliation by investigation concerning the AIB and QIR should be considered on remand in determining the strength of the agency's evidence supporting the appellant's removal. *Id*. In other words, the alleged retaliation by investigation was not a separate personnel action subject to its own burden-shifting analysis. Instead, the Board would

consider the alleged retaliation by investigation as part of the burden-shifting analysis of a personnel action that is enumerated in section 2302(a)(2)(A).

*Applying the Applicable Standard to This Appeal*

¶23    Turning back to the instant appeal, the administrative judge found that the appellant failed to establish that the investigation constituted a personnel action as defined in section 2302(a)(2)(A), or that the investigation was a pretext for gathering evidence to retaliate for his whistleblowing.  ID at 20-22.  She further found that even if the appellant had met his burden regarding Personnel Action 2, the agency met its burden of proving that it would have conducted the investigation in the absence of the appellant's whistleblowing activity.    ID at 36-46, 52-55.   We agree with the administrative judge's findings of fact.  However, we modify the initial decision to apply those findings of fact to the proper standards, which we just described.

¶24    Again, an investigation is not a personnel action, per se.   *Supra* ¶ 21.  Furthermore, we found no substantive argument or evidence establishing that the investigation at issue in this appeal, which was conducted by an outside party, constituted a significant change in the appellant's working conditions or other enumerated personnel action, as defined in section 2302(a)(2)(A).

¶25    The more relevant question is whether retaliation by investigation tainted any personnel action that is enumerated in section 2302(a)(2)(A).  *See supra* ¶¶ 21-22.  To the extent that the administrative judge applied the burden shifting framework to the appellant's retaliation by investigation claim, as if it might be a separate personnel action, she erred.    ID at 36-46, 52-55; *see Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014) (stating that the Board may not proceed to the clear and convincing evidence test unless it has first determined that the appellant established his prima facie case), *aff'd*, 623 F. App'x 1016 (Fed. Cir. 2015).   Nevertheless, we find no basis for disturbing the underlying findings of fact about the legitimacy or nonretaliatory nature of the investigation, findings which are more appropriately considered in

connection with whether the agency would have taken Personnel Actions 3-5 in the absence of the appellant's whistleblowing. *See Mangano*, 109 M.S.P.R. 658, ¶ 44; *supra* ¶ 22.

¶26 Although the appellant reasserts that the investigation was a pretext for retaliation, PFR File, Tab 7 at 11, he has failed to present any persuasive basis for us to disturb the administrative judge's findings to the contrary, which are largely based on hearing testimony and credibility determinations regarding several witnesses from multiple agencies, ID at 21-22, 36-46, 52-55; *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (recognizing that the Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing). The appellant suggests that the USACE complaint and ensuing investigation was a coordinated effort between officials at USACE and his management chain to stop his whistleblowing. PFR File, Tab 7 at 11-13 (citing IAF, Tab 48 at 32). Yet the only evidence to which the appellant refers us is not supportive. IAF, Tab 48 at 32. Instead, that evidence merely shows that the appellant's management chain was concerned about the precise matters raised in USACE's complaint—the appellant's tone and professionalism when dealing with outside entities and the propriety of his mitigation banking while employed at FWS. *Id*.

¶27 To the extent that they are relevant under the applicable standards, we have also considered the appellant's follow-up arguments about whether the investigation would have occurred in the absence of his disclosures. PFR File, Tab 7 at 12-19. Generally speaking, these arguments dispute some of the underlying allegations from the USACE complaint—the USACE complaint that precipitated the agency's investigation. *Id*. For example, in response to USACE's complaint that the appellant was blurring the line between his FWS work and personal mitigation banking work by conducting both in the same phone calls to USACE staff, IAF, Tab 11 at 116, the appellant suggests that he was

entitled to multiple breaks each day, during which he was free to attend to his mitigation banking or any other personal matter, PFR File, Tab 7 at 14-15. In response to USACE's complaint about the possible conflict of interest between his mitigation banking and FWS work, which explicitly cited three sets of regulatory provisions, *see* IAF, Tab 11 at 116-17 (citing 5 C.F.R. §§-2635.401-.403 (governing conflicting financial interests), .501-.503 (governing impartiality in performing official duties), .801-.809 (governing outside activities)), the appellant attempts to show that one set of those regulations did not apply under the circumstances, PFR File, Tab 7 at 16-17 (citing 5 C.F.R. §§ 2635.401, .402 (governing conflicting financial interests)). We are not persuaded. Among other things, the administrative judge found that officials from multiple agencies had valid concerns about the propriety of the appellant's actions and were not prompting the investigation as a pretext for retaliation—a conclusion based largely on credibility. *E.g.*, ID at 46. The appellant's arguments do not warrant a different conclusion. *See Haebe*, 288 F.3d at 1301.

<u>The appellant is not entitled to corrective action for Personnel Actions 3-5.</u>

¶28    The only matter disputed on review for Personnel Actions 3-5 is whether the agency met its burden of proving that it would have taken the same actions in the absence of the appellant's whistleblowing. PFR File, Tab 7 at 19-29. Once again, in analyzing the agency's burden, the Board will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers, but who are otherwise similarly situated. *Carr*, 185 F.3d at 1323; *supra* ¶ 12.

*We modify the initial decision to clarify the applicable standards*.

¶29    As a preliminary matter, we note that the administrative judge gave the parties proper notice of the burdens below, describing the *Carr* factors just as we have in both the jurisdictional order and a prehearing conference summary.  IAF, Tab 3 at 6, Tab 94 at 2 n.3.  However, she characterized the first *Carr* factor somewhat differently in the initial decision by referring to "whether the agency had legitimate reasons for the personnel action."  ID at 33.  This is consistent with how the Board has described the first *Carr* factor, at times, when analyzing a personnel action that is not disciplinary.  ID at 33; *see, e.g.*, *Gonzales v. Department of the Navy*, 101 M.S.P.R. 248, ¶ 12 (2006) (explaining that the first *Carr* factor did not apply straightforwardly to the agency's imposition of a shift change, which was a covered personnel action but was not disciplinary and did not require evidence of misconduct, so it was appropriate to consider the broader question of whether the agency had legitimate reasons for the shift change).  The administrative judge later described the first *Carr* factor as one of "independent causation" for the personnel actions.  *E.g.*, ID at 46, 48, 50.  Though not raised by either party on review, we modify the initial decision to clarify any resulting confusion.  Despite the administrative judge's different descriptions, the first *Carr* factor remains the strength of the agency's evidence in support of its action.  *See Miller v. Department of Justice*, 842 F.3d 1252, 1257, 1259 (Fed. Cir. 2016) (acknowledging that "independent causation" is another way the agency's overall burden of proof has been described and recognizing that the first *Carr* factor is not a question of "whether the agency has put forward some evidence purporting to show independent causation, but instead . . . whether such evidence is strong").

¶30    We also recognize that while the administrative judge initially characterized the *Carr* factors as part of the agency's burden, ID at 32-33, her subsequent discussion of the second and third *Carr* factors suggested otherwise by finding that the appellant did not present any credible motive to retaliate on the part of pertinent agency officials and did not identify any similarly situated employees.

ID at 54-55. The appellant has argued that these findings reflect an improper shifting of the burden to him. PFR File, Tab 7 at 29. To the extent that the initial decision could be interpreted as such, we clarify that it was the agency's burden regarding each of the *Carr* factors, not the appellant's, just as the administrative judge previously explained. *Supra* ¶ 12; ID at 32-33; IAF, Tab 3 at 6, Tab 94 at 2 n.3.

*The agency met its burden.*

¶31    Aside from the modifications explicitly identified below, we discern no basis for reaching a conclusion different than the administrative judge. The agency met its burden of proving by clear and convincing evidence that it would have taken Personnel Actions 3-5—the decision to rescind his approval to engage in outside activity, the restriction on his communications with USACE and AHTD, and the reassignment of certain duties—in the absence of the appellant's whistleblowing. For the first *Carr* factor, the administrative judge's extensive findings of fact reflect strong evidence in support of Personnel Actions 3-5, findings with which we agree. ID at 36-52. While we need not recount all of these findings, we will provide a brief summary.

¶32    Most relevant to Personnel Action 3, the administrative judge's findings detail ample evidence of the appellant conducting personal work during business hours on days in which he was working for FWS, evidence that included the appellant's own admissions. *E.g.*, ID at 36-37. Even if we were to assume that he only did so during breaks, as the appellant asserts, the evidence shows that officials with the USACE, AHTD, and FHA all perceived his dual role as a conflict of interest, and they were routinely confused about which role the appellant was representing during their interactions. *E.g.*, ID at 36-46. In fact, AHTD credited that conflict of interest for their rejection of the appellant's mitigation banking bid on one particular project and denying permission even before the appellant bid on another. ID at 44. The administrative judge's findings also detail how multiple FWS officials were involved in the approval of

the appellant's outside activity request, but they did so with limited information and ultimately regretted the decision as the conflict posed by the appellant's dual role became more apparent. ID at 46-47.

¶33 Next, most relevant to Personnel Action 4, some of the same officials from the USACE and AHTD provided detailed descriptions of the appellant's behavior, which they generally characterized as accusatory, aggressive, and threatening. ID at 38-43. And when given a temporary restriction on his contact with these entities to investigate the same, the appellant flouted the restriction. ID at 48-50. Finally, most relevant to Personnel Action 5, the administrative judge detailed how the FWS had actually reassigned certain duties in response to the appellant's own accommodations request for personal health reasons. ID at 50-52.

¶34 Turning to the second *Carr* factor, the administrative judge found little or no motive to retaliate on the part of relevant agency officials. ID at 52-54. If anything, it appears that FWS officials found disclosures like the appellant's to be both expected and appreciated of an individual in his position, even if they did not agree with the manner in which the appellant conveyed some of his concerns. *See, e.g.*, ID at 15-17, 52. The administrative judge also noted, inter alia, that the relevant agency officials gave the appellant positive performance reviews during the same period, they supported his request for a detail assignment, and they attempted to modify his job duties to alleviate work-related stress. ID at 52.

¶35 On review, the appellant suggests that the administrative judge should have considered whether FWS officials may have been motivated to retaliate based on his disclosures reflecting poorly on them or their relations with the USACE, AHTD, or other outside entities. PFR File, Tab 7 at 28. We agree that this is a relevant consideration and modify the initial decision accordingly. *See Whitmore*, 680 F.3d at 1370 (recognizing that "[t]hose responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as

managers and employees"). However, the circumstances at hand are notably dissimilar to those in *Whitmore*, where the employee's disclosures were highly critical of his employing agency and high-level managers, many high-level managers were aware of and concerned about the disclosures, and there was a years-long pattern of personnel actions taken against the employee following the disclosures. *Whitmore*, 680 F.3d at 1371. In this case, the appellant's disclosures implicated wrongdoing on the part of outside agencies or entities, not his employer—FWS. While that could still create some motive to retaliate, especially if FWS officials perceived the appellant's disclosures as damaging to interagency relationships, we are not aware of any evidence supporting a conclusion that this motive was significant. We discern no basis for concluding that the appellant's protected disclosures caused notable tension between FWS and the outside agencies implicated by his disclosures beyond that which is inherent, given their respective missions, e.g., FWS's protection of the environment and AHTD's construction of highways.

¶36     For the third and final *Carr* factor, the administrative judge found no evidence of other employees who were not whistleblowers but were otherwise similarly situated. ID at 54-55. We modify the initial decision to recognize that, if anything, the absence of evidence concerning the third *Carr* factor "tends to cut slightly against the Government," which the administrative judge failed to acknowledge. *Miller*, 842 F.3d at 1262.

¶37     Although the appellant presents several other arguments pertaining to Personnel Actions 3-5, each is unavailing. The majority of his arguments amount to little more than disagreement with the administrative judge's well-reasoned analysis of hearing testimony as it concerns both the strength of the agency's evidence, *e.g.*, PFR File, Tab 7 at 20-21, and the motivations of relevant officials, *e.g.*, *id.* at 21-25, which we will not disturb, *see Haebe*, 288 F.3d at 1301. For example, the appellant directs us to the transcript of a conversation he had with agency officials about whistleblower protections, which he apparently obtained

by secret recording. PFR File, Tab 7 at 23-24 (referencing IAF, Tab 52 at 67, 70, 76, 79, 82); *see* ID at 7. According to the appellant, portions of this conversation provide direct evidence of the agency's retaliatory intent and a deliberate cover-up. PFR File, Tab 7 at 24. Yet the administrative judge found otherwise, based on a review of the transcript, the context of what these officials said, and the credibility of witnesses who testified about the conversation. ID at 53-54. We see no reason to reach a different conclusion.

¶38     While the record includes strong evidence of FWS officials being concerned with the manner in which the appellant interacted with outside entities and a conflict of interest, the appellant has not presented any basis for concluding that they had a significant motive to retaliate for his disclosures, which supported the agency's mission. Separately, the appellant also asserts that the administrative judge ignored several pieces of evidence, such as evidence about his fall 2015 superior performance appraisal. *E.g.*, PFR File, Tab 7 at 26 (citing IAF, Tab 11 at 34). We have considered this evidence pursuant to our obligation under *Whitmore*, 680 F.3d at 1368. However, the appellant has not persuaded us that his performance appraisal covering the timeframe of October 1, 2014, through September 30, 2015, IAF, Tab 11 at 34, is relevant to the administrative judge's analysis of the strength of the agency's evidence concerning the personnel actions, including Personnel Action 4 (which occurred in March 2016), or her analysis of the motive to retaliate.

¶39     We have considered each of the appellant's arguments, but agree with the administrative judge's conclusion. Weighing each of the *Carr* factors, and all relevant evidence, the agency met its burden of proving that it would have taken the same actions—Personnel Actions 3-5—in the absence of the appellant's whistleblowing. *See* ID at 55.

The appellant's procedural arguments are unavailing.

¶40     The appellant presents a few additional arguments pertaining to the administrative judge's handling of the appeal. First, he argues that the

administrative judge erred in allowing the agency to substitute one requested witness for another, just days before the scheduled hearing. PFR File, Tab 7 at 19-20. We disagree.

¶41 The agency initially requested, and the administrative judge approved, the agency's current Ethics Counselor. IAF, Tab 50 at 9, Tab 94 at 4. A few days before the scheduled hearing, the agency submitted a motion indicating that it had located its former Ethics Counselor—the one who reviewed the appellant's 2013 request to engage in the outside activity of mitigation banking—and wanted to call him instead. IAF, Tab 104 at 1-2; *see, e.g*., IAF, Tab 13 at 125-26. The administrative judge granted the motion over the appellant's objection, which was primarily based on the timing of the substitution. IAF, Tab 107 at 4. On review, the appellant describes the agency's request as a "last minute, surprise change of witnesses" and describes the administrative judge's decision on the matter as erroneous. PFR File, Tab 7 at 19-20. Given the former Ethics Counselor's unique insight into the 2013 decision to grant the appellant's outside activity request, the appellant has not presented any basis for us to conclude that the decision was an abuse of discretion. *See Tisdell v. Department of the Air Force*, 94 M.S.P.R. 44, ¶ 13 (2003) (recognizing that an administrative judge has wide discretion to control the proceedings, to receive relevant evidence, and to ensure that the record on significant issues is fully developed).

¶42 The appellant next asserts that the administrative judge prejudicially interfered with his cross-examination by preventing him from using prior deposition testimony to impeach witnesses. PFR File, Tab 7 at 31. Yet, the appellant has failed to identify the witnesses, testimony, and impeachment evidence to which he is referring, so we are not persuaded by this conclusory argument. *See generally Miller v. Department of Defense*, 85 M.S.P.R. 310, ¶ 8 (2000) (explaining that an administrative judge has wide discretion to control the proceedings, including authority to exclude testimony he believes would be irrelevant or immaterial). We are also unpersuaded by the appellant's final

argument—that the administrative judge did not similarly interfere with the agency's presentation of its case, reflecting a bias against the appellant and for the agency.  PFR File, Tab 7 at 31; *see Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (stating that an administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if her comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible") (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)); *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980) (observing that, in making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators).

## NOTICE OF APPEAL RIGHTS[8]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you

were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.    5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).    If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                    /s/ for
                                  _____
                                  Jennifer Everling
                                  Acting Clerk of the Board
Washington, D.C.